UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BERTHA E.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-05133-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Bertha E. ("Plaintiff") filed a Complaint on June 12, 2019, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on March 25, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

Plaintiff protectively filed her application for DIB on July 22, 2015, alleging disability commencing on May 6, 2011. AR 15, 171-72. On April 24, 2018, after her application was denied (AR 109-12, 115-19), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), and a vocational expert ("VE") testified telephonically. AR 15, 35-74.

On May 22, 2019, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 15-30. The ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through the date she last met the insured status requirements of the Social Security Act ("SSA"), December 31, 2016. AR 17. The ALJ found she had the severe impairments of degenerative disc disease of the lumbar spine; osteoporosis of the lumbar spine; diabetes mellitus; and hypertension. AR 17-21. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work light work[3] except she: (1) can lift, carry, push, and pull 20 pounds occasionally, and 10 pounds frequently; (2) can stand, walk, or sit for six hours out of an eight-hour workday; (3) can frequently push and/or pull with the bilateral upper and lower extremities; (4) can frequently climb ramps and stairs; (5) can occasionally climb ladders, ropes, or scaffolds; (6) can frequently balance; (7) can occasionally stoop, kneel, crouch, or crawl; and (8) must avoid hazards, such as unprotected heights and moving mechanical parts. AR 22.

---

[3] "Light work" is defined as
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good

2

The ALJ further found that Plaintiff was capable of performing her past relevant work as claims adjudicator (Dictionary of Occupational Titles 169.267-010) because that work did not require performance of work-related activities precluded by her RFC. AR 27-28. In the alternative, the ALJ found that, considering Plaintiff as an individual closely approaching advanced age on the date last insured, and subsequently changing to advanced age, along with her education, work experience, and RFC, there were other occupations she could perform with jobs existing in significant numbers in the national economy. AR 28-29. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date of May 6, 2011, through December 31, 2016, the date last insured. AR 29-30. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504

---

> deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-48 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of

the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

/ / /

# III.
# DISCUSSION

The parties present three disputed issues, reordered as:

<u>Issue No. 1</u>: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony;

<u>Issue No. 2</u>: Whether the ALJ erred in evaluating physician opinions; and

<u>Issue No. 3</u>: Whether the ALJ erred in determining Plaintiff's RFC.

Jt. Stip. at 3.

**A.    Plaintiff's Subjective Symptom Testimony**

In Issue No. 1, Plaintiff contends the ALJ failed to state proper reasons for finding her subjective statements not entirely consistent with the medical evidence and other evidence in the record. Jt. Stip. at 19-26, 30-31.

1. <u>Applicable Law</u>

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. <u>Treichler v. Comm'r Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Id.</u> at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).[4]

---

[4] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL

2. <u>Analysis</u>

To support her application for benefits, Plaintiff submitted disability reports and a function report explaining her symptoms, conditions, limitations, and medications. AR 197-205, 214-22[5], 235-50.

At the April 2018 hearing, Plaintiff, testified as follows. Her past work experience included processing unemployment eligibility claims for 31 years, first taking the claims, and then making claims adjudications for about the last 15 years. AR 62-64, 68. She was required to call claimants and employers, and then put everything together. AR 44. She stopped working in 2011 due to her medical condition and because she was having problems with her employer. AR 43-44, 49-50. She could not retain new information, complete tasks, or keep up with her assigned cases. AR 44. Also, a new manager was assigned to the office who harassed employees, including Plaintiff. Her employer would take her from her work and ask why she had not finished. AR 45, 59. When her employer "call[ed her] out" like this and pulled her away to explain herself,

---

1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. <u>Id.</u>; see also <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." <u>Elizabeth B. v. Comm'r of Soc. Sec.</u>, 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020).

[5] Plaintiff's function report appears in duplicate in the record. <u>Compare</u> AR 214-22 <u>with</u> AR 224-32.

it would further cut down on her productivity. AR 47, 59. This caused depression and anxiety, becoming severe enough to where her doctor told her to stop working otherwise she was going to have a heart attack or stroke. AR. 46, 50. She would go to the restroom and break down in tears almost daily, for 10 to 15 minutes at a time. AR 47-48. Spending time in the restroom got her away from her desk and gave her the "needed time to breathe." AR 47-48. Sometimes this stopped her crying; sometimes it did not. AR 48.

In addition to these problems, she had difficulty getting up in the morning and going back into the hostile work environment. AR 48. Also, her field was constantly changing, and she was unable to keep up with the training. AR 48. She could not concentrate or learn new things. AR 48, 57, 59. Her supervisors would give her verbal instructions, but she had difficulty remembering them. AR 48. They would tell her to do things a different way, but she could not grasp the new methods of doing things. AR 49. She was written up once or twice for not completing her cases. AR 58-59.

She had similar problems at home. AR 49. She had difficulty remembering to pay the bills on time, so her husband has paid them for about the last five years. AR 49, 50. Her husband also calendars her doctors' appointments and reminds her of things. AR 50. Her pharmacy reminds her via text message or phone call to refill her medication. AR 50.

After she stopped working, she would have good days, but then days when she experienced anxiety just thinking about what happened with her employer. AR 46, 51. When she has this anxiety, she reached a point where she could not function, becoming teary-eyed, a knot forms in her throat, has heart palpitations, feels hot, perspires, and her legs tingle. AR 51. This has been going on for about five years. AR 51. She believes it is caused by the stress, but sometimes she will have those feelings just watching television or standing in the kitchen. AR 51. As an example, she had anxiety for two days

before the administrative hearing and during the hearing itself. AR 52. Her condition worsened after her father passed away. AR 56. She has problems interacting with people in public. AR 56. Being around too many people, such as in a restaurant, makes her really anxious. AR 56.

In addition to her mental health, she has a herniated disc in the middle of her back that causes pain all the time. AR 52. Her face hurts because she grinds her teeth when she sleeps. AR 52. Her dentist told her the grinding is caused by anxiety, and it became so bad that she lost two teeth. AR 52-53.

She also has fibromyalgia, which is associated with her diabetes and stress. AR 53. Fibromyalgia causes flu-like symptoms; she has chills, constant pain, and soreness throughout her body. AR 53. She also has trouble sleeping, and she is fatigued during the day. AR 57-58.

Stress also causes little lumps on her forehead and the back of her neck. AR 53. Additionally, she has heartburn. AR 53-54. She takes Dexilant for this every other day, and she has been on that medication for the last seven years. AR 54. She also takes Metformin, Crestor, Lexapro for anxiety and depression, and Diovan for high blood pressure. AR 54. She does not see a psychologist, psychiatrist, or other therapist because she could not afford one once she stopped working. AR 54-55.

During the time period from 2014 to 2016, she could walk about 20 minutes before she would experience shortness of breath and tire. AR 55. She could sit for only 15 or 20 minutes due to back pain. AR 55. She used to be able to clean the house, but she had to hire a woman to help her around 2014. AR 59. She could also run errands by herself, but most of the time her husband would help her. AR 59. She can drive, but there have been times where she forgot where she parked, even when she was going somewhere routine like the pharmacy or doctor's office. AR 59-60.

The ALJ summarized and considered Plaintiff's testimony and function report. AR 22-24. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were "not entirely consistent" with the medical evidence and other evidence in the record for the reasons explained in the decision. AR 25. Those reasons were that Plaintiff's subjective statements were not entirely consistent with: (1) her daily activities; (2) her treatment or lack thereof; and (3) the objective medical evidence. AR 24-25, 27.

First, the ALJ found that Plaintiff's ability to participate in certain activities of daily living undermined her allegations of disabling functional limitations. AR 24. The ALJ specifically cited Plaintiff's personal grooming activities, performance of household chores, ability to drive a vehicle, and shopping. AR 24. Later in the decision, the ALJ repeated those activities, and added Plaintiff's ability to prepare meals. AR 27.[6]

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has

---

[6] The Commissioner does not respond to Plaintiff's arguments regarding this reason or attempt to defend it. Jt. Stip. at 26-30; See Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response.").

carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). "[O]nly if [the] level of activity [was] inconsistent with [a claimant's] claimed limitations would . . . activities have any bearing on . . . [subjective testimony]." Garrison, 759 F.3d at 1016. A claimant's daily activities may be grounds for discounting testimony "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions . . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Childress v. Colvin, 2015 WL 2380872, at *15 (C.D. Cal. May 18, 2015) (ALJ erred in finding claimant's daily activities were inconsistent with the alleged severity of impairments where there was no indication that the activities either comprised a "substantial" portion of claimant's day).

      Moreover, the ALJ must make findings about the transferability of daily activities to the workplace. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant" discounting testimony).  This is particularly important because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Trevizo, 871 F.3d at 682 (internal quotation marks and citation omitted).

      Here, Plaintiff's daily activities are not inconsistent with her claim that her impairments preclude her from performing a full-time job in the rigors of a workplace setting. There is no evidence the minimal activities cited by the ALJ

comprised a "substantial" portion of Plaintiff's day. See Orn, 495 F.3d at 639; Childress, 2015 WL 2380872, at *15 (C.D. Cal. May 18, 2015).

      Furthermore, the ALJ failed to make adequate findings about the transferability of Plaintiff's activities to the workplace. The ALJ's conclusory statement that "some of the physical and mental abilities and social interactions required to perform [Plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment," and also later stating the activities are "compatible with competitive work" (AR 24, 27), does not identify which activities translate into what workplace activities. The ALJ did not explain the frequency of any of the activities cited or relate how they translated to the workplace environment. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). As such, reliance upon Plaintiff's activities of daily living here does not constitute a specific, clear, and convincing reason supported by substantial evidence for discredit her symptom testimony. Martinez, 721 F. App'x at 600; Trevizo, 871 F.3d at 682; Orn, 495 F.3d at 630; Dickinson v. Saul, 2019 WL 3837652, at *9 (D. Idaho Aug. 13, 2019) (ALJ's conclusion that claimant could perform light work because she could handle a checkbook, cook, walk for exercise twice a week, and care for herself, insufficient because ALJ did not explain how the activities, "which are not performed on a sustained basis, involved the same mental tasks required in a work setting"); Swanson v. Colvin, 2017 WL 8897144, at *21 (D. Ariz. Feb. 7, 2017) (claimant's daily activities of "simple meal preparation, light housekeeping, driving short distances, and caring for her children are so undemanding that they cannot be said to bear a meaningful

relationship to the activities of the workplace" (internal quotation marks omitted)).

Next, the ALJ noted Plaintiff reported a history of depression and anxiety for many years, "however, the [Plaintiff's] treatment records document no course of treatment with a mental health professional," and thus there was a lack of mental health treatment records. AR 24. The ALJ then stated that Plaintiff "has not generally received the type of treatment one would expect for a totally disabled individual." Id. However, "benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford." Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005). Further, the Ninth Circuit has directed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Garrison, 759 F.3d at 1018 n.24 (internal quotation marks omitted).

As mentioned above, the Plaintiff testified she does not see a psychologist, psychiatrist, or other therapist because she could not afford one once she stopped working. AR 54-55. Although the ALJ noted in her summary of Plaintiff's testimony that Plaintiff did not "maintain appointments" with a mental health provider "due to a lack of funds," the ALJ never stated why this explanation was inadequate or otherwise cast doubt upon it. AR 23. The ALJ was erred by failing to do so. See Warre, 439 F.3d at 1006; Orn, 495 F.3d at 638 (ALJ erred by relying on gaps in treatment where claimant explained in his testimony that he "can't afford it," and the ALJ did not suggest that this proffered reason was "not believable"); SSR 16-3p, 2016 WL 1119029 at *8 ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); Claire G. v. Berryhill, 2019 WL 2287733, at *10 (D. Or. May

13

28, 2019) (ALJ erred by "fail[ing] to explore why [the claimant] had only sporadic mental health treatment"); <u>Surman v. Comm'r Soc. Sec. Admin.</u>, 2018 WL 3491667, at *6 (C.D. Cal. July 19, 2018) (ALJ erred by discounting claimant's subjective allegations in part because there was no indication ALJ considered claimant's explanation that his insurance did not cover psychological treatment, counseling, or therapy); <u>Smith v. Colvin</u>, 2015 WL 5882896, at *5 (C.D. Cal. Oct. 7, 2015) (ALJ erred by relying, at least in part, on claimant's alleged lack of treatment without expressly considering her proffered explanation that she did not seek more treatment due to a lack of insurance for a period of time and lack of approval for further treatment).

  Finally, after faulting Plaintiff for her lack of treatment, the ALJ discussed objective findings that she found "inconsistent with the alleged severity of [Plaintiff's] symptoms and functional limitations." AR 24-25. However, inconsistency between Plaintiff's statements and the objective evidence, alone, is not a sufficient basis to discount testimony. See <u>Rollins</u>, 261 F.3d at 856-57; <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting testimony); <u>Dschaak v. Astrue</u>, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's . . . determination could not rely solely on conflicts with the medical evidence.").

  Thus, assuming without deciding that the ALJ properly discounted Plaintiff's testimony based on inconsistency with the medical evidence, as such ground cannot be the sole basis to do so, the ALJ's discounting of Plaintiff's subjective symptom testimony is not supported by specific, clear, and convincing reasons supported by substantial evidence. Further, here, the Court cannot conclude the ALJ's error was harmless. See, e.g., <u>Brown-Hunter</u>, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting

claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the claimant's testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

### B. Remand is appropriate.

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. The assessment of Plaintiff's testimony affects other issues raised in the Joint Stipulation. See e.g., Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because "[t]he ALJ's . . . evaluations of [p]laintiff's [testimony] . . . are inescapably linked to conclusions regarding the medical evidence"); Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's testimony and give appropriate consideration to

physician's opinions, step-two findings, and step-five analysis). Because it is unclear, considering these issues, whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall reassess Plaintiff's subjective complaints, and then reassess Plaintiff's RFC in light of those complaints, and proceed through the remaining steps of the disability analysis to determine whether she could still perform her past work during the relevant period, or what other work, if any, Plaintiff was capable of performing that existed in significant numbers.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: April 29, 2020

_____
JOHN D. EARLY
United States Magistrate Judge